750 A.2d 751

IAN MICHAEL WYMBS, AN INFANT BY HIS GUARDIANS AD LITEM JESSE B. WYMBS AND LILLIAN WYMBS, AND JESSE B. WYMBS AND LILLIAN WYMBS, PLAINTIFFS–APPELLANTS, v. TOWNSHIP OF WAYNE, COUNTY OF PASSAIC, AND STATE OF NEW JERSEY, DEFENDANTS–RESPONDENTS, AND NANCY CONNELLY, ANNE J. CONNELLY AND PUBLIC SERVICE GAS AND ELECTRIC COMPANY, DEFENDANTS.

Argued February 28, 2000—Decided May 11, 2000.

*Leonard P. Rosa* argued the cause for appellants (*Harwood Lloyd,* attorneys).

*Michael H. Cohen* argued the cause for respondent Township of Wayne (*Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski,* attorneys; *Heidi P. Rubin Cohen,* on the letter brief).

*Albert C. Lisbona* argued the cause for respondent County of Passaic (*Dwyer, Connell & Lisbona,* attorneys).

*Valerie L. Egar,* Deputy Attorney General, argued the cause for respondent State of New Jersey (*John J. Farmer, Jr.,* Attorney General, attorney; *Mary C. Jacobson,* Assistant Attorney General, of counsel).

The opinion of the Court was delivered by

COLEMAN, J.

This case involves a claim that a sharp curve in a roadway was a "dangerous condition" on public property as defined in *N.J.S.A.* 59:4–1a of the New Jersey Tort Claims Act. The specific issues raised involve a number of evidentiary rulings made by the trial

court that, according to plaintiffs, improperly restricted their opportunities to satisfy their burden of proof. The jury found that plaintiffs had failed to prove that the road in question was a dangerous condition. The Appellate Division affirmed, finding that none of the alleged evidentiary errors was relevant to the issue of whether the road was a dangerous condition.

We hold that properly presented evidence of prior accidents at the same location as the one involved in a trial may be admissible to prove the existence of a dangerous condition. We also hold that the trial court committed reversible error when it permitted a surprise key witness for the State to testify over plaintiffs' objections.

I.

On May 29, 1991, four high school students, Nancy Connelly, Ian Wymbs, Frank Goffredo, and Mark Harding, drove home together from a church meeting in Wayne Township (Township), Passaic County (County). Connelly, who was driving her mother's car, dropped off Harding and proceeded onto Preakness Avenue. As she proceeded westbound on Preakness Avenue, she entered a curve between Garside Avenue and Jansen Lane and lost control of the vehicle. The car swerved several times, traversing the eastbound lane of Preakness Avenue, and then traveled sideways, eventually striking a utility pole on the eastbound shoulder of the roadway. Fortunately, all of the vehicle's occupants survived. Wymbs, however, sustained severe head injuries resulting in substantial mental and physical impairments.

Preakness Avenue is owned by the County and is patrolled by the Township of Wayne Police Department. Although no speed limit sign was posted on the westbound side, the area is residential with a speed limit of twenty-five miles per hour. *N.J.S.A.* 39:4-98b(1). On the night of the accident, there were no street lights illuminating the curve. There was one yellow warning sign with a black curve symbol placed approximately 150 feet from the curve. It is undisputed that the sign was partially obstructed by foliage.

On December 16, 1992, Wymbs and his parents initiated the present litigation against Connelly, her mother, the Township, the County, the State of New Jersey, Public Service Electric and Gas Company (PSE & G), and several fictitious individuals, corporations, and public officials. The relevant portion of the complaint alleged that the public entities and employees were liable for Wymbs's injuries because the curve constitutes a "dangerous condition" under the New Jersey Tort Claims Act, *N.J.S.A.* 59:4–1a. Based on a settlement reached prior to trial, plaintiffs filed voluntary stipulations dismissing the complaint with prejudice against Connelly, her mother, and PSE & G. The three public entities were the only remaining defendants in the case at the time of trial.

Plaintiffs asserted three theories of liability to support the claim that the curve on Preakness Avenue was a dangerous condition: (1) the physical characteristics of the roadway were inherently dangerous, including the curve's severity, radius, and super-elevation; (2) the curve's warning sign failed to adequately warn motorists of the severity of the curve; and (3) the warning sign was obstructed by foliage. Defendants denied the curve was a "dangerous condition", arguing instead that the accident was caused solely by the driver's negligence. Alternatively, defendants contended that they lacked sufficient control of the roadway and its signage to be held liable.

Plaintiffs presented expert testimony by William Poznak, a civil engineer and land surveyor, in an attempt to establish the dangerousness of the curve. Poznak testified that his measurements indicated that the curve was 40.74 degrees with a super elevation of 0.064.[1] Poznak asserted that for a twenty-five miles-per-hour zone, the maximum curvature should have been 31.49 degrees, and added, "if the super elevation was higher, it would be safer." Poznak conceded, however, that the curve could be safely negotiat-

---

[1] Super elevation refers to the elevated part of a road that allows a car to negotiate a curve without sliding or flying off.

ed at twenty-one to twenty-five miles per hour, and hazardous speeds for driving that curve were "around thirty, thirty-five."

Plaintiff presented three additional types of evidence to establish the existence of a dangerous condition and that defendants had notice of such a condition. Plaintiff offered prior signage evidence, testimonial evidence regarding prior accidents at the curve, and a 1966 engineering plan calling for a widening of the curve's radius that was never implemented. The trial court limited the use of that evidence to the issue of notice of a dangerous condition pursuant to *N.J.S.A.* 59:4–3, and disallowed it as substantive evidence of a dangerous condition. Finally, over plaintiffs' objection, the trial court permitted the State to call a previously undisclosed witness, William Anderson, a Traffic Engineer.

The jury returned a verdict, by a vote of five to one, finding plaintiffs had failed to prove "by a preponderance of the evidence that the nature of the curve and the warning signs on Preakness Avenue between Garside and Jansen created a substantial risk of injury when used with due care." Plaintiffs' motion for a new trial was denied. The Appellate Division affirmed the judgment in an unpublished opinion. We granted plaintiffs' petition for certification, 161 *N.J.* 332, 736 *A.2d* 525 (1999), and now reverse.

II.

The New Jersey Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 12–3, specifies the circumstances under which a public entity can be held liable for injuries to another. "Generally, immunity for public entities is the rule and liability is the exception." *Fluehr v. City of Cape May*, 159 *N.J.* 532, 539, 732 *A.2d* 1035 (1999). The exception relevant to this case is found in *N.J.S.A.* 59:4–2, which provides that public entities may be liable for injuries caused by a "dangerous condition" on the property of a public entity. A successful plaintiff under this subsection of the TCA must prove by a preponderance of the evidence that "at the time of the injury the public entity's property was in a dangerous

condition, that the condition created a foreseeable risk of the kind of injury that occurred, ... that the condition proximately caused the injury .... [and that] the action the entity took to protect against the [dangerous] condition or the failure to take such action was ... palpably unreasonable." *Garrison v. Township of Middletown,* 154 *N.J.* 282, 286, 712 *A.*2d 1101 (1998) (internal quotations omitted). The term "palpably unreasonable" connotes "behavior that is patently unacceptable under any given circumstance." *Kolitch v. Lindedahl,* 100 *N.J.* 485, 493, 497 *A.*2d 183 (1985). Within the TCA, a "dangerous condition" is defined as "a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used." *N.J.S.A.* 59:4–1a. A dangerous condition under that provision refers to the "physical condition of the property itself and not to activities on the property." *Levin v. County of Salem,* 133 *N.J.* 35, 44, 626 *A.*2d 1091 (1993) (citations omitted).

## III.

Plaintiffs argue that the trial court erred in limiting the use of evidence of prior accidents, prior warning signs, and a 1966 engineering plan to the issue of notice of a dangerous condition. Plaintiffs, relying on *Manna v. State,* 129 *N.J.* 341, 348, 609 *A.*2d 757 (1992), contend that multiple accidents at a specific location establish a *prima facie* case under *N.J.S.A.* 59:4–2. Plaintiffs maintain that by "limiting the evidence of prior accidents at the site, the trial court prejudicially prevented them from utilizing all possible proofs in connection with the roadway's dangerous condition." Finally, plaintiffs contend that they were severely prejudiced by the surprise testimony presented by William Anderson. They argue that the jury could have found the curve was not a dangerous condition based solely on Anderson's testimony.

Both the State and the County argue that the trial court properly limited the prior-accident evidence to the issue of notice because plaintiffs failed to proffer any testimony with regard to

the specific causation of any of the accidents. According to the State, plaintiffs did not offer such evidence because the police reports of the prior accidents clearly indicated that none of them was attributable to the curve. The Township agrees that the trial court properly limited the testimony regarding prior accidents, and argues that "plaintiffs cannot seriously contend that they were prejudiced because witnesses were precluded from testifying as to events of which they had no personal knowledge."

## A.

First, we address plaintiffs' contention that the trial court erred in restricting the use of evidence of prior accidents at the curve, prior signage, and the 1966 engineering plan for the curve to demonstrate notice only.

Plaintiffs offered testimonial evidence regarding prior accidents at the curve as substantive evidence and proof of notice of the curve's dangerousness. The trial court determined that that evidence would be probative of the curve's dangerousness only if there was specific testimony that the specific accidents "were a product of the curve in the road." After hearing the testimony and reviewing police reports presented by the State, the court determined that there was no proof that the prior accidents were caused by the curve. Hence, that evidence was limited to the issue of notice.

Whether the occurrence of multiple accidents at a particular location can be used as substantive evidence to prove the existence of a dangerous condition at that location has been widely debated. The Supreme Judicial Court of Massachusetts has accurately summarized why the use of such prior-accident evidence is problematic. It stated:

[The] persuasive force [of prior accident evidence offered to establish dangerousness] depends upon similarity in the circumstances of different injuries, of which it is hard to be certain. Substantial identity in the alleged defective condition is only the first essential. The person who was injured at the time to which the offered evidence relates may have been defective in eyesight, feeble, or careless. The fact that he was injured may have little or no bearing upon the danger to a normal

traveller. Moreover, though the same defective condition may have been present at both times, the actual causes of the two injuries may have been different. Unless a comparison of the circumstances and causes of the two injuries is made, the injury to another is without significance. But if such a comparison is undertaken, the minds of the jurors must be diverted from the injury on trial into a detailed and possibly protracted inquiry as to injuries received by others at various times. Those injuries have only a collateral and often minor bearing upon the case. As to them the opposing party will often be ill prepared to present evidence. There is danger that a jury may disregard the real differences in the circumstances of the two incidents, and find upon mere superficial similarity that a dangerous condition existed.

[*Kromhout v. Commonwealth*, 398 *Mass.* 687, 500 *N.E.*2d 789, 793 (1986) (internal quotations and citation omitted).]

██ Those are legitimate concerns. Nevertheless, many jurisdictions, including New Jersey and Massachusetts, have not adopted a *per se* rule precluding the use of prior accidents as substantive evidence of a dangerous condition. The rationale for not adopting a *per se* rule of preclusion is that that practice conflicts with the modern rules of evidence, which emphasize a trial court's discretionary determination of relevancy. *See N.J.R.E.* 401–403; *Green v. New Jersey Mfrs. Ins. Co.*, 160 *N.J.* 480, 492, 734 *A.*2d 1147 (1999). "In determining relevance, the trial court should focus on 'the logical connection between the proffered evidence and a fact in issue[,]' or 'the tendency of evidence to establish the proposition that it is offered to prove.' " *Green, supra,* 160 *N.J.* at 492, 734 *A.*2d 1147 (internal citations omitted).

We have previously permitted evidence of prior accidents, albeit in slightly different contexts than the one presented in this case, to establish circumstantially that a condition or a product is dangerous, provided that the prior accidents are substantially similar to the one at issue.

In *DiDomenico v. Pennsylvania-Reading Seashore Lines,* 36 *N.J.* 455, 178 *A.*2d 10 (1962), a case involving an accident at a railroad crossing, an issue arose concerning whether the plaintiff's proffered evidence of prior accidents had any probative value in proving that the crossing was "extra-hazardous." We noted that "[s]afety history may be admissible for some purposes but before

it can have any probative value it is incumbent upon the party who offers the evidence to show the other occurrences took place under the same or substantially the same conditions as the accident in question." *Id.* at 464–65. Similarly, in *Ryan v. KDI Sylvan Pools, Inc.,* 121 *N.J.* 276, 579 *A.*2d 1241 (1990), a products-liability case, we discussed whether prior accidents are admissible in "design-defect failure-to-warn cases" to show the dangerousness of a particular product. *Id.* at 290, 579 *A.*2d 1241. We concluded that under a risk-utility analysis, "[e]vidence of prior similar accidents is relevant and should be admissible as evidence of the risk, or lack thereof, of a product." *Ibid.* Those cases inform our decision in the present appeal.

In light of existing case law, we see no sound reason to unduly limit a trial court's discretion in deciding whether evidence of prior accidents is admissible as substantive evidence of a dangerous condition in a case such as this one. A majority of other jurisdictions agree that trial courts should have the discretionary authority to determine, on a case-by-case basis, the relevancy of prior accidents to the case at hand. *See, e.g., Johnson v. State,* 636 *P.*2d 47, 57 (Alaska 1981) (noting that evidence of both prior and subsequent occurrences is admissible to prove defective or dangerous condition, causation, or notice, so long as conditions are similar); *Jones v. Pak–Mor Mfg. Co.,* 145 *Ariz.* 121, 700 *P.*2d 819, 821, *cert. denied,* 474 *U.S.* 948, 106 *S.Ct.* 314, 88 *L.Ed.*2d 295 (1985) (observing that "the trial court has discretion to admit evidence of prior accidents"); *Chicago, Rock Island & Pacific R.R. Co. v. Lynch,* 246 *Ark.* 1282, 441 *S.W.*2d 793, 795 (1969) (admitting evidence of prior accidents if there is "showing of such substantial similarity of conditions in the proof as to make it reasonable and probable that the same cause existed to produce the same result"); *Elsworth v. Beech Aircraft Corp.,* 37 *Cal.*3d 540, 555, 208 *Cal.Rptr.* 874, 691 *P.*2d 630 (1984), *cert. denied,* 471 *U.S.* 1110, 105 *S.Ct.* 2345, 85 *L.Ed.*2d 861 (1985) (stating "[e]vidence of prior accidents is admissible to prove a defective condition, knowledge, or the cause of an accident, provided that the circumstances of the other accidents are similar and not too remote"); *Kaeo v. Davis,* 68

*Haw.* 447, 719 *P.*2d 387, 393 (1986) (allowing evidence of previous accidents as proof of dangerous condition if " 'the conditions under which the alleged previous accidents occurred were the same or substantially similar to the one in question' ") (citation omitted); *Simon v. Town of Kennebunkport,* 417 *A.*2d 982, 986 (Me.1980) (allowing admission of other-accident evidence if "there is a substantial similarity in the operative circumstances between the proffer and the case at bar" and noting that "the admission of other-accident evidence is committed to the sound discretion of the [judge]"); *Kromhout, supra,* 500 *N.E.*2d at 793 (noting that "where substantial identity in the circumstances appears, and the danger of unfairness, confusion or undue expenditure of time in the trial of collateral issues seems small, the admission of such [prior-accident] evidence has resided in the judge's sound discretion"); *Berry v. Fruehauf Trailer Co.,* 371 *Mich.* 428, 124 *N.W.*2d 290, 291 (1963) (allowing similar prior-accident evidence to establish a dangerous or defective condition subject to requirement of similar conditions and reasonable proximity in time); *Stewart v. State,* 92 *Wash.*2d 285, 597 *P.*2d 101, 112 (1979) (noting judge's decision is "largely discretionary" regarding admission of "evidence of a prior accident which occurred under the same or substantially similar circumstances ... for the purpose of showing a dangerous or defective condition and the defendants [sic] notice of such condition"); *see also* 2 Wigmore, *Evidence* § 443–44 at 528–32 (Chadbourn rev.1979) (stating a similar rule).

■ We hold that prior accidents can be used to prove the existence of a dangerous condition on public property if the following threshold standard is satisfied: (1) the same or substantial similarity of circumstances between the prior accident and the one involved in the case on trial, and (2) the absence of other causes of the accident.

■ The requirement of substantial similarity is more stringent when the prior-accident evidence is offered to prove the existence of a dangerous condition than when offered to prove notice because " 'all that is required [for notice] is that the

previous ... [accident] should be such as to attract the defendant's attention to the dangerous situation which resulted in the litigated accident.' " *Kaeo, supra,* 719 *P.*2d at 393 (citation omitted). Requiring different levels of similarity depending on the purpose for which the prior accidents are offered ensures that there is a "logical connection" between the prior accidents and the "fact in issue." *Green, supra,* 160 *N.J.* at 492, 734 *A.*2d 1147 (internal quotations omitted). Trial courts have broad discretion in determining whether the "logical connection" exists and whether that evidence should be otherwise excluded under *N.J.R.E.* 403. *Ibid.* Notably, California, whose TCA served as the model for our own, *Fluehr, supra,* 159 *N.J.* at 542, 732 *A.*2d 1035, utilizes a similar approach. *Fuller v. State,* 51 *Cal.App.*3d 926, 125 *Cal. Rptr.* 586, 596–97 (1975) (stating "[t]he strictness of [the] requirement of similarity of conditions is 'much relaxed,' however, when the purpose of the offered evidence is to show notice") (internal quotations omitted). Application of the foregoing principles to the present case persuades us to conclude that the trial court properly limited the prior-accident evidence to the issue of notice.

## B.

■ Plaintiffs also presented evidence of warning signs posted in the vicinity of the curve that had been removed by one of the public entities prior to the accident.

One of the signs was a four-by-three-feet yellow sign with black letters reading "Dangerous Curve." Another sign was square shaped with a white background that contained red and black letters stating "Slow Sharp Curve." Plaintiffs presented a speed survey in which the State recommended removing the two signs posted at the westbound entrance to the curve. The trial court limited that evidence to the issue of notice, and initially plaintiffs agreed with that ruling. At the charge conference, however, plaintiffs argued that the prior signs should also serve as substantive evidence of the curve's dangerousness under *N.J.R.E.* 803(b), as an admission by the State. The trial court disagreed, noting

that plaintiffs expressly acquiesced in the previous limiting instruction, and to later change the purpose for which the evidence is admitted would unduly prejudice defendants.

We need not decide whether plaintiffs preserved their objection on this issue because a retrial is necessary for a separate reason. However, in the interest of finality, we reject plaintiffs' assertion that the prior signage was probative of the curve's dangerousness. To establish a "dangerous condition," a legal term of art, a plaintiff must prove that a condition "'creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.'" *Garrison, supra,* 154 *N.J.* at 286, 712 *A.*2d 1101 (quoting *N.J.S.A.* 59:4-1a). At most, the prior signs reflect a public entity's belief that the public needed to be alerted to the existence of a sharp curve in the roadway. The signs do not, without more, tend to establish that some physical attribute of the curve created "a substantial risk of injury when ... used with due care." *Ibid.* Therefore, the trial court's ruling limiting the prior signs evidence to the issue of notice was proper.

## C.

Plaintiffs offered into evidence a 1966 engineering plan, referred to as the Spindler Plan (Plan), that was in the possession of the County. The Plan, which called for widening of the curve's radius, was never implemented. The content of the Plan was consistent with the testimony of plaintiffs' expert that widening the curve would have made it safer. Contrary to plaintiffs' assertion, a never-implemented plan to widen a road is not probative of whether the curve created a substantial risk of injury when used with due care. The Plan noted the current physical attributes of the road, and recommended widening the curve as part of a plan to install curbs and sidewalks. That alone is not, as plaintiffs claim, an admission that the curve is a "dangerous condition." We are satisfied that the trial court acted within its discretion in limiting that evidence to the issue of notice, and the

ruling did not produce an unjust result. *Mogull v. CB Commercial Real Estate Group, Inc.,* 162 *N.J.* 449, 469, 744 *A.*2d 1186 (2000).

We are constrained to observe that although the Appellate Division was correct in deciding that the Spindler Plan and the Speed Survey evidence was admissible to prove only notice, its reasoning that to hold otherwise would trigger plan and design immunity, was faulty. The TCA exempts a public entity from liability for an injury "caused by the plan or design of the public property ... where such plan or design has been approved in advance of the construction or improvement by the ... governing body of a public entity." *N.J.S.A.* 59:4–6a.

A public entity does not automatically receive the benefit of that immunity. "It is well established that the burden is on the public entity both to plead and prove its immunity under our Act." *Kolitch, supra,* 100 *N.J.* at 497, 497 *A.*2d 183. To establish an entitlement to plan or design immunity, a public entity must demonstrate that "an approved feature of the plan sufficiently addressed the condition that is causally related to the accident." *Manna, supra,* 129 *N.J.* at 353, 609 *A.*2d 757 (internal quotations omitted). In the present case, defendants did not establish their entitlement to immunity under the TCA. Indeed, they conceded at oral argument that the plan and design immunity is inapplicable to this case because there was no plan or design of the roadway at the curve that was planned or approved by a governmental agency.

Similarly, the "sign" immunity provided by *N.J.S.A.* 59:4–5 is inapplicable to the present case. *N.J.S.A.* 59:4–5 protects a public entity from liability for injuries "caused by the failure to provide ordinary traffic signals, signs, markings or other similar devices." Here, plaintiffs are not asserting the absence or inappropriateness of a sign as a basis to impose liability. Instead, they contend that the prior signs represent admissions by the State that the curve is a dangerous condition. That assertion does not implicate immunity under *N.J.S.A.* 59:4–5.

## D.

■ Next, we address the claim of reversible error based on the surprise testimony offered by William Anderson. When the trial began on July 9, 1997, the case was four and one half years old and discovery had been completed. Anderson had not been named by the State as a potential witness; nor had he certified any of the answers to interrogatories. During the twelfth day of trial the State informed plaintiffs' counsel of its intention to call Anderson, Manager of the Bureau of Traffic Engineering and Safety Programs for the Department of Transportation (DOT), as its only witness to testify with regard to the State's regulation and maintenance of county-owned roadways. Counsel for plaintiffs was afforded a brief opportunity in a courthouse conference room to interview Anderson before he testified. Following that interview, plaintiffs' counsel objected to Anderson's testimony on the ground that Anderson had not been named in (nor did he certify) the State's answers to interrogatories. The basis for the objection was primarily that Anderson's testimony represented the first time the State indicated that it would produce substantive. evidence in its defense. In its answers to interrogatories, the State had provided little, if any, substantive information. Plaintiffs argued that allowing Anderson's testimony was extremely unfair because, although the State's discovery responses were mostly "unknown" or "not applicable," plaintiffs were now "faced with a witness who has a great deal of knowledge."

The State conceded that it inappropriately failed to amend its interrogatory responses, yet argued that the court should allow Anderson to testify because (1) Anderson appeared on its witness list distributed to plaintiffs' counsel on the first day of trial, and (2) the State intended to limit Anderson's testimony to general procedures for roadway warning signs without any specific reference to Preakness Avenue. The State represented that Anderson would be testifying only to: (1) the DOT's regulations with respect to road sign content in 1973; (2) the regulations that determine appropriate signs based on the individual characteristics of a

roadway; and (3) the regulations regarding warning and speed limit signs prior to a curve in a roadway. Importantly, the State represented that Anderson had no knowledge about Preakness Avenue.

After acknowledging that the State's failure to amend the interrogatories was "inexcusable," the trial court permitted Anderson to testify. The court reasoned that although *Rule* 4:17–7 states that "[i]n no case shall amendments be allowed at trial where it appears that the evidence sought to be introduced was known to the party seeking such leave, more than 10 days prior to trial[,]" that rule has been relaxed to permit the testimony of witnesses whose names were not included in the response to interrogatories (citing Pressler, *Current N.J. Court Rules,* comment 2 on *R.* 4:17–7 (2000)). The court found that Anderson's testimony was "pivotal to the defense of the State of New Jersey because it is their only evidence."

Because the court believed Anderson's testimony to be critical to the State's defense, it considered the "declaration of a mistrial and the assessment of actual costs including counsel fees." But plaintiffs' counsel did not seek a mistrial; he sought to exclude Anderson's testimony. The trial court decided that rather than "make the State go bare to the jury," it would allow Anderson to testify. However, the court placed restrictions on his testimony, directing that Anderson would "not be permitted to express any expert opinions on Preakness Avenue," and that he would "be confined to the practices and procedures of the Department of Transportation with respect to its function of supervising or directing and controlling public roadways in the State of New Jersey."

Unfortunately, Anderson's testimony did not adhere to the strictures established by the court. Although he testified with respect to DOT procedures and signage regulations, he also testified specifically on the State's evaluation of Preakness Avenue. For instance, Anderson stated that the "Slow Sharp Curves" and "Dangerous Curves" signs prior to the curve on Preakness

Avenue in 1973 were ordered removed pursuant to the *Manual on Uniform Traffic Control Devices* ("*Manual*") as non-conforming. He explained that since the signs were black and red, rather than yellow and black as required by the *Manual*, they were ordered removed as non-compliant. Anderson also testified that the current yellow and black sign on Preakness Avenue indicates to the driver that there is a curve ahead to the right. He stated that the original "Slow Sharp Curve" sign gave "no indication to the motorist what's happening in front of them," and that the "Dangerous Curve" sign that had been previously posted would be meaningless to drivers because "Dangerous" is not officially defined.

Anderson also testified that several of the State's answers to the plaintiffs' interrogatories were inaccurate, including its statement that it had no knowledge with respect to the signs on Preakness Avenue, that there were no applicable standards, policies and procedures followed by the State in establishing traffic controls, and that it was not involved in the determination or placement of traffic controls or signs on Preakness Avenue. Although the State represented that Anderson had no personal knowledge of Preakness Avenue, during cross-examination Anderson testified that he in fact had personal knowledge of the State's microfilm file on the roadway. Anderson testified that according to his review of the State's file regarding a Speed Survey:

> There was a—a survey of the road. Someone drove the road, someone collected speed data on the road, drove the curves, evaluated them based on fall back indications as to the—its called the criticality of the curve, *whether it was critical, whether we needed to post a lower speed on the curve.* (Emphasis added).

Although Anderson testified that the State's file contained detailed procedures and additional calculations made during the Speed Survey, he did not bring the file to court. When the State's counsel objected to this line of questioning on the grounds that Anderson was not produced to testify regarding Preakness Avenue because he has no specific knowledge of the roadway, the court overruled the objection, stating "that's obviously not true." When asked why he had told plaintiffs' counsel prior to his

testimony that he had no personal knowledge as to Preakness Avenue, Anderson responded that he meant that he has not personally driven the road or personally conducted surveys of the road.

The Appellate Division concluded that the admission of Anderson's testimony was not reversible error because "his testimony related to whether the State's action in removing and replacing the prior warning sign was 'palpably unreasonable,' an issue the jury did not reach." We disagree with both the trial and appellate court's legal analysis.

*Rule* 4:17–7 clearly required the State to amend its answers to interrogatories prior to the trial naming Anderson as a person with knowledge or information relevant to the issue whether the curve was a dangerous condition. The discovery rules "were designed to eliminate, as far as possible, concealment and surprise in the trial of law suits to the end that judgments therein be rested upon the real merits of the causes and not upon the skill and maneuvering of counsel." *Evtush v. Hudson Bus Transp. Co.,* 7 *N.J.* 167, 173, 81 *A.2d* 6 (1951). Although the discovery rules are to be construed liberally and broadly, "[c]oncealment and surprise are not to be tolerated." *Lang v. Morgan's Home Equip. Corp.,* 6 *N.J.* 333, 338, 78 *A.2d* 705 (1951). Nonetheless, trial courts have "wide discretion in deciding the appropriate sanction for a breach of discovery rules," as long as the sanction is "just and reasonable." *Mauro v. Owens–Corning Fiberglas Corp.,* 225 *N.J.Super.* 196, 206, 542 *A.2d* 16 (App.Div.1988), *aff'd sub nom., Mauro v. Raymark Indus., Inc.,* 116 *N.J.* 126, 561 *A.2d* 257 (1989).

When faced with a surprise witness, possible sanctions to be explored by the trial court include granting a continuance or declaring a mistrial with or without an award of fees to the surprised party. *Ratner v. General Motors Corp.,* 241 *N.J.Super.* 197, 203, 574 *A.2d* 541 (App.Div.1990). Another option is to exclude the testimony if such an outcome is just and reasonable. *Thomas v. Toys "R" Us, Inc.,* 282 *N.J.Super.* 569, 581, 660 *A.2d* 1236 (App.Div.), *certif. denied,* 142 *N.J.* 574, 667 *A.2d* 191 (1995).

However, when the testimony in question is "pivotal" to the case of the party offering the testimony, a court should seek to avoid exclusion where possible. *Id.* at 582, 660 *A.*2d 1236; *Ratner, supra,* 241 *N.J.Super.* at 203, 574 *A.*2d 541. Factors that would " 'strongly urge' the trial judge, in the exercise of his discretion, to suspend the imposition of sanctions, are (1) the absence of a design to mislead, (2) absence of the element of surprise if the evidence is admitted, and (3) absence of prejudice which would result from the admission of the evidence." *Westphal v. Guarino,* 163 *N.J.Super.* 139, 146, 394 *A.*2d 377 (App.Div.), *aff'd o.b.,* 78 *N.J.* 308, 394 *A.*2d 354 (1978).

In the present case, that Anderson's testimony was a complete surprise to plaintiffs is undeniable. Furthermore, the trial court found that Anderson's surprise testimony was "pivotal to the defense of the State of New Jersey because it is their only evidence." Thus, the State's position at trial and the trial court's observations from having presided over the trial for almost eleven days simply belie the appellate panel's conclusion that Anderson's testimony only related to whether removing the prior signs was "palpably unreasonable."

Anderson testified in detail regarding the State's survey of the curve and its conclusion that the roadway did not warrant additional warning signs. In fact, the trial court specifically stated that based on Anderson's testimony about the State's file on Preakness Avenue, the jury could have inferred that "the State inspected [the roadway] and found that it was safe." Distilled to its essentials, Anderson told the jury that the curve was not a dangerous condition and that the prior signage and its removal had nothing to do with the issue of a dangerous condition. Moreover, Anderson contradicted the State's answers to plaintiffs' interrogatories in several respects, particularly in noting that the State did have a file on Preakness Avenue and that Anderson had reviewed that file. The incomplete and inaccurate answers to interrogatories prevented counsel for plaintiffs from taking necessary depositions.

The trial court, during the motion for a new trial, acknowledged the prejudicial effect of Anderson's testimony on the plaintiffs when it observed that "had the court known what the testimony in full would have been from Mr. Anderson, [it] never would have permitted him to take the stand and it was error to do so." In ultimately denying plaintiffs' motion for a mistrial, the court stated that any error was waived by plaintiffs' failure to seek a remedy, such as a continuance or a mistrial, at the time of their initial objection.

 The trial court's invocation of the waiver rule conflicts with *Rule* 1:7–2, which instructs that to preserve a question for review "relating to rulings or orders of the court . . ., a party, at the time the ruling or order is made or sought, shall make known to the court specifically the action which the party desires the court to take or the party's objection to the action taken and the grounds therefor." Here, plaintiffs made a timely objection to Anderson's testimony, and set forth, in detail, the grounds for their objection. Therefore, the trial court erred in concluding that plaintiffs waived their objection for failing to specifically request a mistrial or a continuance. *Cf. State v. Farrell*, 61 *N.J.* 99, 106, 293 *A.*2d 176 (1972) (holding defendant had satisfied objection requirement by making motion for a mistrial which was "tantamount to a timely objection, alerting the trial judge to the improprieties and giving him an opportunity to rectify the situation").

Plaintiffs requested the exclusion remedy, a form of relief to which they were entitled. Although exclusion may not be appropriate in cases in which the surprised evidence is pivotal to the offering party's case and other options are available, here exclusion was the only option. The surprise to plaintiffs was real, the State's conduct was inexcusable, and the prejudice to plaintiffs irreparable. A continuance was not a viable option because plaintiffs had tried their case for twelve days, believing the State would offer no testimony. Consequently, Anderson's testimony should have been excluded. Even if the trial court was motivated by caution, in the spirit of *Rule* 4:40–2, to see if the jury would

return a verdict for plaintiffs, once the jury found against plaintiffs, and the trial court determined that it was prejudicial error to have allowed Anderson's testimony in the first instance, plaintiffs' motion for a new trial should have been granted. Therefore, we reverse the judgment of the Appellate Division affirming the denial of the motion for a new trial.

## IV.

The judgment of the Appellate Division is reversed and the matter is remanded for a new trial.

*For reversal and remandment*—Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG and VERNIERO—6.

*Opposed*—None.