**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2158-15T4

THOMAS CHETNEY,

    Plaintiff-Respondent,

v.

NEW JERSEY MANUFACTURERS
RE-INSURANCE COMPANY,

    Defendant-Appellant.

_____

       Argued November 13, 2017 — Decided July 17, 2018

       Before Judges Sabatino, Ostrer and Whipple.

       On appeal from Superior Court of New Jersey,
       Law Division, Middlesex County, Docket No. L-
       7829-13.

       Kevin F. Sheehy argued the cause for appellant
       (Leyden, Capotorto, Ritacco & Corrigan,
       attorneys; Paul J. Capotorto, of counsel;
       Kevin F. Sheehy, on the briefs).

       Michael J. Deem argued the cause for
       respondent (R.C. Shea & Associates, attorneys;
       Michael J. Deem, of counsel and on the brief).

PER CURIAM

    After a damages-only trial, a jury found that plaintiff Thomas

Chetney suffered a permanent injury as a result of a collision

caused by an uninsured driver, and awarded $1.5 million in compensatory damages. The court molded the award, to reflect defendant's $500,000 policy limit, and a workers' compensation lien. The court thereafter denied a motion for a new trial.

Chetney's uninsured motorist carrier, defendant New Jersey Manufacturers Re-Insurance Company (NJMRe), appeals, raising numerous points of evidentiary error. We reject all but one. We agree with NJMRe that the trial court erred in permitting plaintiff and his wife to testify that he suffered from erectile dysfunction after the accident, without plaintiff offering an expert opinion that the injuries from the accident caused that condition. On that sole basis, we reverse and remand for a new trial.

Chetney was working as a paramedic on February 5, 1998 when his ambulance was struck by a vehicle operated by an uninsured driver. Chetney claimed the accident caused a permanent injury to his lumbosacral spine. Although Chetney suffered injuries from three prior motor vehicle accidents, one prior slip and fall, and four subsequent non-motor vehicle accidents, he alleged that the 1998 accident was the principal cause of his permanent injury. He said he suffered from chronic pain despite spinal fusion surgery in 2004, physical therapy, and numerous steroid injections. At the time of trial in 2015, he controlled his pain — but did not

eliminate it — with prescription morphine and an implanted device designed to redirect nerve signals.[1]

He and his wife testified that the injury from the 1998 accident caused him to limit various recreational and family-related activities; and negatively affected his quality of life. Despite his prior accidents, Chetney and his wife portrayed him as an active, physically fit young man who participated in sports and hunting; tumbled with his two toddlers; maintained his lawn and yard; performed tree and snow work for himself and neighbors; worked long hours; and built furniture as a hobby. Those activities were eliminated or severely restricted after the accident.

In particular, Chetney and his wife testified that he suffered from erectile dysfunction after the 1998 collision. His wife testified that she was pregnant at the time of Chetney's accident, but had a miscarriage shortly thereafter. As a result of Chetney's erectile dysfunction, they were unable to conceive a third child or engage in intimacy. She also testified that he once threatened

_____

[1] In 2000, plaintiff timely filed his complaint, which included a per quod claim of his wife. After voluntarily dismissing the complaint, he refiled the complaint, absent the per quod claim, in 2013, pursuant to an agreement with defendant. We surmise that in the interim, plaintiff pursued a workers' compensation claim.

to kill himself if his unremitting pain did not abate.  She told him to seek help.

As noted, the most salient point on appeal pertains to the testimony about erectile dysfunction.  NJMRe filed a pre-trial motion to bar any testimony about the condition, contending that (1) plaintiff did not adequately disclose it in discovery; and (2) expert testimony was required to establish that plaintiff suffered from the condition, and that the 1998 collision caused it.  In particular, NJMRe sought to redact portions of plaintiff's orthopedic expert's de bene esse deposition, in which he explained how nerve impingement in the lumbosacral spine could affect plaintiff's urologic function.

The trial court granted the motion as to the expert's testimony, concluding he lacked the expertise to address urologic conditions, but denied it as to the testimony of plaintiff and his wife.[2]  The court reasoned that expert testimony was not necessary to establish what Chetney experienced himself.  Furthermore, Chetney was free to testify about how the accident affected his life.  NJMRe renews its arguments before us.

We consider first the alleged discovery violation. We review the trial court's discovery ruling for an abuse of discretion and

---

[2] Chetney does not cross-appeal from the order restricting his expert's testimony.

A-2158-15T4

shall not disturb the trial court's decision absent a proven injustice. Bender v. Adelson, 187 N.J. 411, 428 (2006) (reviewing for an abuse of discretion a "trial court's decision to bar defendants' requested amendments to their interrogatory answers [to add experts] and deny a further discovery extension"); Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 517 (1995) (stating appellate courts shall review the dismissal of a complaint with prejudice "for discovery misconduct" under an abuse of discretion standard and shall not interfere "unless an injustice appears to have been done"). In particular, courts should "seek to avoid exclusion" of testimony that is "'pivotal'" to the case of the party offering the evidence. Wymbs v. Twp. of Wayne, 163 N.J. 523, 544 (2000) (citation omitted). Even if there is a discovery violation, in deciding whether to "suspend the imposition of sanctions," a court should consider whether there was a design to mislead, surprise if the evidence is admitted, and prejudice from admission of the evidence. Ibid.

We discern no abuse of discretion here. First, we are not convinced there was a discovery violation. Although the medical reports before us did not expressly refer to "erectile dysfunction," they repeatedly referred to urological or genitourinary problems that Chetney experienced post-accident. One report noted that "he has a problem with marital relations."

Asked to describe the "nature, extent and duration" of his injuries in interrogatories, Chetney did not mention "erectile dysfunction," but referred to his medical records, his underlying spinal injury, and stated his injuries "affect all facets of [his] life including, but not limited to . . . domestic activities both interior and exterior . . . ." There is no indication defendant sought more specific answers. At plaintiff's deposition, defense counsel asked him if there was anything he could not do that he was able to do before the 1998 accident. Plaintiff explained that he used to be "a lot more intimate with [his] wife." Defense counsel did not follow up.

In any event, there is no showing that plaintiff had the design to mislead. Furthermore, given the references to urological and marital issues, the claim of surprise is unpersuasive. The relevant prejudice is not the impact of the evidence itself, but the complaining party's inability to contest it because of alleged late disclosure. See State v. Heisler, 422 N.J. Super. 399, 415 (App. Div. 2011). Notably, NJMRe fails to establish what measures it would have undertaken to contest Chetney's and his wife's factual testimony about their private, intimate relations had Chetney explicitly disclosed the condition earlier.

We also discern no harmful error in the court's determination that Chetney and his wife could testify as to his condition. While

the rule authorizing expert testimony is permissive, see N.J.R.E. 702 (stating that a "witness qualified as an expert . . . may testify") (emphasis added), an expert's testimony is required when an average juror lacks the experience and knowledge to form a conclusion about a matter. Biunno, Weissbard & Zegas, Current N.J. Rules of Evidence, cmt. 1 to N.J.R.E. 702 at 731 (2018); see, e.g., Butler v. Acme Markets, Inc., 89 N.J. 270, 273 (1982) (requiring expert testimony if the issue is "so esoteric that jurors of common judgment and experience cannot form a valid judgment . . . .").

We agree that the specific diagnosis of "erectile dysfunction" is outside the expertise of a lay witness, and should be presented through a treating physician, see Delvecchio v. Twp. of Bridgewater, 224 N.J. 559, 577-78 (2016) or an expert, see Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 564 (Law Div. 1985).[3] However, in general, Chetney and his wife avoided medical nomenclature and instead described in lay terms what he experienced and what she observed. See J.W. v. L.R., 325 N.J. Super. 543, 548

---

[3] "Erectile dysfunction" is defined as "inability to achieve or maintain penile tumescence sufficient for sexual intromission or for achieving orgasm." Stedman's Medical Dictionary, 596 (28th ed. 2006); see also Ida G. Dox et al., Attorney's Illustrated Medical Dictionary, D52 (1997) (stating that erectile dysfunction "is considered part of the overall multifaceted process of male sexual function").

(App. Div. 1999) (stating that expert testimony is not required to present subjective symptoms). They both clearly had personal knowledge of these facts. See N.J.R.E. 601. Plaintiff's counsel used the medical term "erectile dysfunction" in questioning and in summation. But, it is likely the jury simply understood the term to summarize the condition that the witnesses described. In any event, we discern no harmful error as to this aspect of their testimony. R. 2:10-2.

However, we part company with the trial court's determination that expert testimony was not required to establish causation. "If plaintiff seeks to prove causation of a current medical or psychological condition, of course, competent expert testimony would be required." J.W., 325 N.J. Super. at 548; see also Allendorf v. Kaiserman Enters., 266 N.J. Super. 662, 672 (App. Div. 1993) (stating that the "logical relationship" underlying a claim of medical causation "generally must be established by appropriate expert medical opinion"); Kelly v. Borwegen, 95 N.J. Super. 240, 243-44 (App. Div. 1967); see also Quail v. Shop-Rite Supermarkets, Inc., ___ N.J. Super. ___, ___ (App. Div. 2018) (slip op. at 8, 14) (affirming grant of summary judgment where trial court ruled that plaintiff would be unable to show proximate cause of death without expert testimony, for which the certificate of death was not a substitute).

This case is no different.  Chetney's symptoms could have had psychological or physical causes unrelated to his injury.[4] Although, as the trial court noted, Chetney did not need an expert to describe his symptoms, he needed an expert to identify their medical cause.  Chetney and his wife testified he experienced no difficulty before the 1998 collision, but coincidence is not causation.

Furthermore, the evidence did not clearly establish when the condition first appeared.  Chetney testified at trial that he experienced difficulty in marital relations for thirteen to fifteen years, which would place the onset of symptoms two to four years after the accident.  In his deposition, he said, without pinpointing a date, that he had less intimacy with his wife after the accident.  His wife testified that difficulties arose within months of the accident, and progressively worsened, as a result of which marital relations had ceased for fifteen years.[5]

---

[4]  See Attorney's Illustrated Medical Dictionary, D52 (1997) (stating that "causes [of erectile dysfunction] may be organic (from the nervous or vascular systems) or psychological, but they most commonly appear to derive from the problems in all three areas acting in concert . . . .").

[5] Chetney's orthopedic expert provided relevant information about the connection between his neurologic injury and his ability to control his urologic functioning.  However, his testimony was excluded.  Plaintiff contends on appeal some of the expert's opinion was presented to the jury notwithstanding the court's

We cannot conclude that this error was harmless. We do not minimize the substantial other evidence in support of Chetney's claim. Even from the cold record, we discern that Chetney presented as a sympathetic witness. He was a former Army paramedic. At the end of his military service, he continued to serve the public as a paramedic, often facing hazardous situations. His expert testified persuasively that the 1998 collision was the cause of Chetney's spinal injury, which in turn led to a life of pain, and restricted activities, as Chetney and his wife detailed. It is apparent from the record that plaintiff's counsel effectively challenged the defense expert on cross-examination as to his expertise, the care with which he reviewed Chetney's prior records, and his conclusion that Chetney suffered no permanent injury as a result of the 1998 collision.

Yet, the testimony of Chetney's erectile dysfunction was emotionally powerful evidence. His wife testified movingly about her miscarriage, her inability to have a desired third child, and

---

ruling. Plaintiff contends that his counsel proposed redactions after the court ruling which left some of the expert's opinions intact, and defense counsel did not object. We note that the record does not document these redactions, nor does the trial transcript reflect exactly what was played. But see R. 1:2-2. Therefore, we presume that the transcript was redacted in accord with NJMRe's in limine motion, which would have excluded the discussion plaintiff now claims was presented to the jury. Any lingering disputes over such redactions shall be addressed on remand by the trial court before the retrial.

the loss of intimacy with her husband. She described him as a vigorous and physically fit young man before the accident, notwithstanding periodic injuries and recoveries. Chetney testified that he felt like less of a man, as a result of his condition. Plaintiff's counsel highlighted this aspect of Chetney's injuries in both opening and summation.

In sum, a new trial is warranted at which Chetney would be obliged to present expert testimony to establish the causal connection between his spinal injury — which his orthopedic expert connected to the 1998 accident — and his erectile dysfunction. We recognize that, lacking the guidance of this court's present opinion, no such expert was presented in discovery, except for the limited opinions of plaintiff's orthopedic expert, which the trial court excluded. In advance of a new trial, the court may, in the exercise of its discretion, reopen discovery as to any changes in plaintiff's condition. The court may also revisit the limitations it imposed on plaintiff's orthopedist and allow plaintiff to amend prior disclosures to present the required medical expert opinion; and permit defendant to obtain an independent medical examination, as well as a responsive opinion.

We briefly discuss NJMRe's remaining points on appeal, none of which are persuasive. NJMRe contends it was reversible error to permit testimony and argument regarding Chetney's suicidal

ideation. The testimony was limited to his wife's reference to a conversation in which Chetney stated his pain was so intense and unremitting that he was "going to blow [his] brains out" if he could not get any relief. The wife did not contend that Chetney continued to harbor suicidal thoughts, attempted suicide, or otherwise suffered from a related mental illness. Defense counsel did not object at the reference to suicidal thoughts in plaintiff's counsel's opening, or his wife's testimony, nor did NJMRe raise it in its motion for a new trial. Hence, we review NJMRe's contention for plain error. R. 2:10-2.

We perceive none. We may conclude that defense counsel's "failure to object signifies that the error belatedly claimed was actually of no moment." See State v. Krivacska, 341 N.J. Super. 1, 42-43 (App. Div. 2001). Furthermore, the testimony was relevant to establishing the extreme and unremitting pain Chetney experienced. Standing alone, it fell short of persuading the jury that Chetney suffered from mental illness or was actually on the brink of taking his own life. At most, NJMRe may have been entitled to a limiting instruction, but NJMRe did not request one.

NJMRe also contends that the court erred in granting plaintiff's motion to bar testimony about "gaps in treatment" shortly after the accident. Plaintiff's counsel contended that Chetney was receiving medical care through workers' compensation

at the time, and exploration of "gaps in treatment" would necessarily require evidence about how the workers' compensation system limited Chetney's autonomy in seeking treatment.

As the trial court recognized, in denying NJMRe's new trial motion on this point, gaps in treatment could be relevant to Chetney's credibility, and whether he suffered the injury claimed, and the consequences of it. But, citing N.J.R.E. 403, the court concluded that the probative value of "gaps in treatment" evidence was outweighed by the risk that it would trigger "the introduction of an entire slew of worker's compensation issues when both parties had stipulated they would be barred from trial." The court concluded, "This would pose a huge risk of confusion of the issues and would certainly increase trial time by an extensive margin."

We recognize that Chetney has provided no evidence that treatment delays were caused by the workers' compensation process.[6] However, "[d]eterminations pursuant to N.J.R.E. 403 should not be overturned on appeal 'unless it can be shown that the trial court

---

[6] NJMRe has provided competent evidence that Chetney sought treatment with Dr. Patrick Foye the day of collision, February 5, 1998. Chetney attended a follow-up appointment four days later, but did not attend another appointment until June 1, 1998. Dr. Foye scheduled Chetney for an EMG within the next week. Chetney missed the appointment, did not return Dr. Foye's calls, and attended a re-evaluation on March 3, 2000. Chetney did not demonstrate that his workers' compensation carrier denied treatment during that time period, or that he made any effort to contest such denial. See N.J.A.C. 12:235-3.2.

palpably abused its discretion, that is, that its finding was so wide off the mark that a manifest denial of justice resulted.'" Green v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999) (citing State v. Carter, 91 N.J. 86, 106 (1982)).  NJMRe has not met that high threshold to disturb the trial court's broad discretion in applying N.J.R.E. 403.

Finally, there was no miscarriage of justice in plaintiff's counsel's argument in summation that the defense expert was unethical.  The court sustained the defense objection and delivered a curative instruction.  Notably, the curative instruction was the one that defense counsel proposed, upon the court's invitation, without amendment.  We presume the jury followed the court's instruction.  See, e.g., State v. Loftin, 146 N.J. 295, 390 (1996) ("That the jury will follow the instructions given is presumed.").

NJMRe's remaining points lack sufficient merit to warrant extended discussion.  See R. 2:11-3(e)(1)(E).

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2158-15T4