791 A.2d 1056 (2002)
348 N.J. Super. 223
Maureen SCHAEFER and Jerry Schaefer, Plaintiffs-Appellants,
v.
CEDAR FAIR, L.P., incorrectly named as Dorney Park & Wildwater Kingdom, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted January 30, 2002.
Decided February 27, 2002.
*1057 Levinson Axelrod, attorneys for appellants (John J. Schwarz, Edison, on the brief).
Post & Schell, attorneys for respondent (Jay A. Gebauer, Voorhees, on the brief).
*1058 Before Judges KING, WECKER and WINKELSTEIN.
The opinion of the court was delivered by WINKELSTEIN, J.A.D.
Plaintiffs Maureen Schaefer and Jerry Schaefer, her husband,[1] appeal a judgment of no cause for action entered after a jury verdict in favor of defendant. Schaefer was injured while riding on a water slide in Dorney Park and Wildwater Kingdom in Allentown, Pennsylvania.
Plaintiffs seek a reversal of the judgment and a new trial. The issues presented are (1) whether the trial judge committed reversible error by admitting evidence of the absence of other accidents on the water slide, and (2) whether the jury's verdict was against the weight of the evidence. In Wymbs v. Tp. of Wayne, 163 N.J. 523, 750 A.2d 751 (2000), the Court permitted, under certain conditions,
evidence of prior accidents as substantive evidence of a dangerous condition. This case addresses whether the trial judge may permit, after evidence of prior accidents has been admitted, evidence of safety historya lack of prior accidentsto exculpate a defendant from liability. We conclude that once evidence of prior accidents is admitted to prove a dangerous condition, it is within the discretion of the trial judge to allow evidence of no prior accidents to refute the allegations. Here, the trial judge properly exercised his discretion to allow evidence of the water slide's safety history. We find no reversible error and affirm.

I
On July 14, 1997, plaintiffs filed a two-count complaint in the Superior Court, Law Division, Hunterdon County. The complaint sought damages from defendant Dorney Park & Wildwater Kingdom for injuries Schaefer sustained on Monday, August 28, 1995, while using the park's Lightning Falls water slide. Plaintiff Jerry Schaefer sought damages for loss of consortium. The pleadings were subsequently amended to reflect that Cedar Fair, L.P., was the proper name of the defendant-owner of the park.
On June 9, 2000 plaintiffs filed a notice of motion for rulings on their objections to certain videotaped testimony of J.C. Hunsucker, defendant's liability expert. On the day trial commenced, July 10, 2000, Judge Bernhard heard argument and ruled on plaintiffs' objections. Most relevant to the appeal, the judge overruled plaintiffs' objections concerning Hunsucker's reference to the lack of prior accidents on the water slide and permitted testimony that Schaefer's accident was the only one of its kind to occur on the water slide on which she was injured. At the end of a five-day trial the jury found defendant was not negligent. The court entered an order of judgment dismissing plaintiffs' claims with prejudice. Plaintiffs' motion for a new trial was denied.

II
The following testimony was produced at trial. Schaefer and her family were patrons of Dorney Park & Wildwater Kingdom when she decided to ride the Lightning Falls water slide. Schaefer testified that as she emerged from the chute, or flume, into the splash pool which lay beneath the slide, her left foot struck the bottom of the pool. She testified: "[I]mmediately my left foot turned underneath me and smashed on the hard surface of theof the bottom of the pool.... I heard the crack instantly. Within a second I heard my foot crack underneath me, and
*1059 instantly [experienced] severe, severe pain." Schaefer sustained fractures of three bones in her left foot and ankle, and required surgery to repair the fractures. Her treating orthopedic surgeon testified that Schaefer's injuries are permanent and the "scarring associated with the surgery, the swelling and widening of the foot and pain will continue."
Schaefer, her husband, their brother-in-law, and the Schaefers' adult daughter Kelly, all testified that the water level in the splash pool was low on the day of Schaefer's accident. The witnesses explained to the jury that the water in the splash pool came up to approximately mid-thigh level when they stood in the pool. A tape measure used at trial showed a distance of thirty-three to thirty-eight inches from the floor to the point on their bodies where they recalled the depth of the water. The Schaefers testified that rather than skimming along the water, they "dropped" into the splash pool upon exiting the chute. Jerry Schaefer estimated the drop between the end of the chute and the water in the splash pool was "probably a foot and a half to two feet, maybe a little more." Schaefer's estimate that the water level in the splash pool was too low was based on a "feeling" she got when she dropped, not on a visual observation, as she never looked back at the chute after she entered the splash pool. Schaefer and her husband also testified that on the day of the accident the water from the splash pool was not flowing over the steps of the splash pool into the adjoining Lazy River.
Without objection, plaintiffs presented two witnesses who had previously been injured on the Lightning Falls water slide. Eugene Musselman testified the water level in Lightning Falls' splash pool was twelve to eighteen inches below the level of the chute when he used the water slide on June 25, 1994. He said he "dropped" as he exited the chute. He said when he hit the water in the splash pool he did a "backflip" off of the inner tube and his right foot hit the bottom of the splash pool, cutting his right toe. He testified: "I came down the water chute and when I hit the water I flipped backwards and something rough on the bottom [ ] of the pool[, and] cut my-right toe." His testimony concerning the distance between the bottom of the chute and the water level of the splash pool was challenged on cross-examination. When questioned by defense counsel at trial about why he testified at his deposition that it was a two-foot drop, not a twelve to eighteen inch drop as he stated at trial, Musselman replied, "[i]t was my ... guesstimate." He also testified that while he reported to the park first aid station where he was treated for his injury, he did not mention that the splash pool water level was low.
Becky Zierold testified that in July 1995, while riding down Lightning Falls, the tube slipped out from underneath her while she was still in the chute; she hit the back of her head on the chute, and then, upon exiting the chute, she "just dropped." She also reported her injury to park personnel at the first aid station, as was reflected in the first aid log kept by the park. She recalled a one-foot gap between the end of the chute and the water in the splash pool on the day of her accident. Aside from the happening of the accidents themselves, no explanation was provided for either the Musselman or Zierold incidents.
William Poznak, P.E., a licensed engineer, testified for plaintiffs. He stated that the water slide was not being operated properly because the "differential between the chute and the water level was too much." His opinion was based in part on the industry standards contained in the U.S. Department of Health and Human Services Suggested Health and Safety *1060 Guidelines for Recreational, Water Slide Flumes, which provides that flumes [chutes] should terminate either below the water surface or "no more than 2 inches above the water surface." Poznak opined that defendant had violated this standard on the day of Schaefer's injury by allowing the water level to be "approximately eighteen to twenty-four inches below the chute." Poznak also testified that on the day of the incident, the water level at Lightning Falls violated Dorney Park's own safety manual which provides: "The proper level of water in the splash pool should be maintained at the same level as the mouth of the exit flume.... This item is extremely important and should be constantly monitored." Poznak also referred to another section of the manual which provides:
On all ... waterslides, ... the water must be maintained at the same level as the mouth of the exit flume. This water level should be monitored very closely, particularly during peak hours, as the water level will decrease due to rider carry out and evaporation.

FAILURE TO MONITOR THE WATER LEVEL FACTOR MAY PRESENT A HAZARD TO GUESTS ENTERING A POOL THAT IS TOO SHALLOW. IT ALSO PRESENTS A DROPPING ACTION WHICH DIRECTS THE RIDER'S FEET TO THE BOTTOM CAUSING INJURY RATHER THAN A SKIMMING ACTION ACROSS THE POOL AS DESIGNED. Poznak explained this is precisely what happened to Schaefer and is what this portion of the safety manual was designed to prevent.
The defense witnesses described how the ride operated, and contradicted plaintiffs' witnesses' testimony that the water level in the splash pool was one to two feet below the bottom of the chute when Schaefer was injured. According to the testimony of Joseph Minninger, the Dorney Park Director of Operations, the Lightning Falls water slide was placed in operation in 1989. Three separate chutes flow from a tower into the splash pool. The splash pool itself is forty-five feet long, fifty feet wide and four feet deep; it contains approximately 60,000 gallons of water. The chute in which the user travels down is a "standard" forty-eight inch tube which exits into the pool. Water is pumped in and riders sitting on inner tubes are discharged, from a tower, approximately fifty feet above the water, along a stream of water down the chute into the splash pool. When the riders leave the chute and enter the splash pool, while still sitting in the inner tubes, they are supposed to skim across the pool without their feet touching the bottom of the pool. Signs are placed on the ride instructing patrons how to sit in the inner tube and ride the chute into the splash pool.
Over plaintiffs' counsel's objection, Minninger testified that since Lightning Falls opened in 1989, 200,000 patrons rode Lightning Falls per year, and no one was injured by dropping into the splash pool because the water level was too low as claimed by Schaefer. His information was based on records that had been kept in the park since the ride opened. Minninger explained that the splash pool was designed with three sides that are eighteen inches above the water level and one side that is two to three inches below the water level. This design causes the water to flow constantly over the steps on the low side of the pool into the adjoining Lazy River. While water is flowing over the steps, the water in the splash pool remains forty-eight inches deep; and when the water depth is forty-eight inches, the surface of the water is level with the bottom of the slides. Minninger conceded that the park had no written documentation confirming the water level, nor did he have any specific *1061 recollection of the water level on the date of Schaefer's accident. However, Minninger was at work on the day of the incident, and it was his habit to check to see if the water was flowing over the back of the steps; he was confident the ride was working properly on the day of Schaefer's accident. Minninger testified that when water is flowing down the slides (which it was at the time of Schaefer's accident), he has never seen the water level in the Lightning Falls' splash pool below the bottom of the slides, nor has he ever seen the water in the splash pool not flowing over the steps into the Lazy River.
Not only did Minninger inspect the water level in the splash pool on a daily basis, but so did maintenance personnel, lifeguards and the lifeguards' supervisors. Lifeguards at Dorney Park were trained to monitor water flow and to notify their supervisors of any noticeable change. Two lifeguards and a roaming supervisor were assigned to the splash pool area.
Finally, Minninger described a videotape which was shown to the jury. He explained that, as depicted on the videotape, other than the five minutes it takes for the empty splash pool to initially fill with water, it is mechanically impossible for the slide to operate in the manner depicted by plaintiffs' witnesses, because the ride will not continue to operate when the water level in the pool is eighteen to twenty-four inches below the mouth of the chutes, or without water flowing over the back of the steps into the Lazy River.
Hunsucker's videotaped deposition was shown to the jury. He described how "the steps at the end of the catch pool serve as a natural dam to contain water in the catch pool." The water flows over the steps into the Lazy River from where it is recirculated. The water that ultimately exits over the steps "is the main source of water return" for the slide. He explained why it would not be possible for the ride to operate continuously without the water flowing over the back of the steps into the Lazy River. If the water were to stop flowing into the Lazy River, not only would the pumps "suck the river dry," but the water would have nowhere to go. With 6,000 gallons of water per minute flowing into the pool, it was not possible for the slide to operate with the water level eighteen to twenty-four inches below the end of the chute as plaintiffs' witnesses testified, because if the water level is this low, it would not flow over the steps and be recycled to the top of the ride; at this point, the ride would cease to work.
Hunsucker also testified that Schaefer's accident was the only one of its kind to occur on this particular water slide. In response to a question on cross-examination asking him if he was ever provided materials that gave a compilation of reported incidents of injury on the Lightning Slide, he responded "[t]he incident rate was one." He reached this conclusion based on information he received that "this was the only incident of this type that they had on this flume."
Edwin Walters, the park's maintenance foreman, also had no specific recollection of the water level on the date of the accident. However, the maintenance log, which is kept in the normal course of business at Dorney Park, indicated he was the individual who performed the inspection on Lightning Falls on the date of Schaefer's accident. Had the operation of Lightning Falls been abnormal that day, it would have been noted in the log. The August 28, 1995 log did not indicate anything unusual with the ride prior to its opening that day, nor were any repairs done to the Lightning Falls slide during the course of the day. Based on this information, Walters concluded that the splash pool was "full of water" at the time *1062 of his morning inspection on the day of the accident.
Walters corroborated Hunsucker's and Minninger's testimony that it is mechanically impossible to operate the ride with a water level eighteen to twenty-four inches below the slide or when the water is not flowing over the steps. He testified that when all three slides were operating in the Lightning Falls water slide, as they were on the day in question, more than 6,000 gallons of water per minute flow into the splash pool; when the water flows down the slides, it has nowhere to go but over the back of the steps.

III
We first address the evidence issue. Plaintiffs argue the jury verdict was tainted by the improper admission of evidence regarding the absence of other accidents on the water slide. Plaintiffs allege the introduction of the evidence was unduly prejudicial and warrants a new trial. Defendant's position is that since plaintiffs attempted to establish defendant's negligence by use of prior accident testimony, the trial judge did not abuse his discretion by permitting defendant to present evidence of the lack of prior accidents.
Musselman testified that he was injured on the Lightning Falls on June 1994. He said: "I came down the water chute and when I hit the water I flipped backwards and something rough on the bottom ... of the pool[, and] cut my-right toe." He testified he followed the instruction that the park gave him to ride the tube, was sitting in the center of the tube, and became "disengaged" from the tube after he entered the water at the bottom of the chute. He said when he hit the water "I fell straight down." His description of his accident was similar to Schaefer's explanation of how she was injured.
Zierold testified that she was a regular attendee at the park, and on July 3 or 4, 1995, she was injured on the Lightning Falls ride. When asked by plaintiff's counsel to describe how the accident occurred, she answered:
A: I was going down the ride in the tube and the tube came underneath me and it slipped out, so and then I seemed to go by myself and then when I landed, I was

* * *
Q: And, then you continued down the [chute] and into the splash pool?
A: Yes.
Q: When you entered the splash pool was there a skimming sensation or did you feel a dropping sensation?
A: I just dropped.
Although she fell out of the inner tube while still in the chute, Zierold testified, as did Schaefer, that when she left the chute she did not skim across the top of the splash pool, but rather "just dropped." It was not clear whether she "dropped" because she was not sitting in the inner tube when she struck the water in the splash pool or for some other reason.
Hunsucker made his comment about the lack of prior accidents during cross-examination. When asked by plaintiffs' counsel if he had been provided with incident or accident reports for other people who were injured, he replied that "[t]he only information I have [is that] this was the only incident of this type that they had on this flume." Also, over plaintiff's objection, Minninger testified that from the opening of Lightning Falls in 1989, of the 200,000 patrons who rode Lightning Falls each year, no injury of "similar-type" to plaintiff's had ever been incurred on that ride.
Generally, in a negligence action, the absence of other accidents to show the safety of a condition is not admissible. Rogove v. Stavola Constr. Co., Inc., 331 N.J.Super. 212, 215, 751 A.2d 607 (App. Div.), certif. denied, 165 N.J. 602, 762 A.2d 217 2000); Ertle v. Starkey, 292 *1063 N.J.Super. 1, 9, 678 A.2d 261 (App.Div. 1996); Muscato v. Saint Mary's Catholic Church, 109 N.J.Super. 508, 510, 264 A.2d 74 (App.Div.1970); Karmazin v. Pennsylvania R.R. Co., 82 N.J.Super. 123,129, 196 A.2d 803 (App.Div.1964). In Wymbs, Justice Coleman had occasion to review why the admission of prior accident evidence has been rejected in the past. He stated:
[The] persuasive force [of prior accident evidence offered to establish dangerousness] depends upon similarity in the circumstances of different injuries, of which it is hard to be certain. Substantial identity in the alleged defective condition is only the first essential. The person who was injured at the time to which the offered evidence relates may have been defective in eyesight, feeble or careless.... Moreover, though the same defective condition may have been present at both times, the actual causes of the two injuries may have been different. Unless a comparison of the circumstances and causes of the two injuries is made, the injury to another is without significance. But if such a comparison is undertaken, the minds of the jurors must be diverted from the injury on trial into a detailed and possibly protracted inquiry as to injuries received by others at various times.... As to [those other injuries] the opposing party will often be ill prepared to present evidence. There is danger that a jury may disregard the real differences in the circumstances of the two incidents, and find upon mere superficial similarity that a dangerous condition existed.
[Wymbs, 163 N.J. at 533-34, 750 A.2d 751 (quoting Kromhout v. Commonwealth, 398 Mass. 687, 500 N.E.2d 789, 793 (1986)) (internal quotations and citation omitted).]
Although recognizing these "legitimate concerns," the Court also recognized that the rule barring admission of prior accident evidence is not absolute. The Court concluded that prior accidents could be used to prove the existence of a dangerous condition (on public property) "if the following threshold standard is satisfied: (1) the same or substantial similarity of circumstances between the prior accident and the one involved in the case on trial, and (2) the absence of other causes of the accident." Id. at 536, 750 A.2d 751. Justice Coleman pointed out that New Jersey, as well as many other jurisdictions, have not adopted a per se rule which precludes the use of prior accidents "as substantive evidence of a dangerous condition." Id. at 534, 750 A.2d 751. "The rationale for not adopting a per se rule of preclusion is that that practice conflicts with the modern rules of evidence, which emphasize a trial court's discretionary determination of relevancy." Ibid. (citing N.J.R.E. 401-403; Green v. New Jersey Mfrs. Ins. Co., 160 N.J. 480, 492, 734 A.2d 1147 (1999)). Justice Coleman concluded that there was "no sound reason to unduly limit a trial court's discretion in deciding whether evidence of prior accidents is admissible as substantive evidence of a dangerous condition in a case such as this one." Id. at 535, 750 A.2d 751. He agreed with "a majority of other jurisdictions" that the trial court should have the discretion, "on a case-by-case basis," to determine "the relevancy of prior accidents to the case at hand." Ibid.
In arriving at its decision, the Court relied, in part, on DiDomenico v. Pennsylvania-Reading Seashore Lines, 36 N.J. 455, 178 A.2d 10 (1962). DiDomenico was an action for personal injuries and property damage which arose out of a railroad grade-crossing collision between plaintiff's automobile and defendant's freight train. The plaintiff sought to introduce evidence of two accidents which occurred at the crossing, one prior to, and one subsequent to, the date of the accident at issue. The Court stated:

*1064 Safety history may be admissible for some purposes but before it can have any probative value it is incumbent upon the party who offers the evidence to show the other occurrences took place under the same or substantially the same conditions as the accident in question.

[Id. at 464-65, 178 A.2d 10.]
A number of other jurisdictions are in accord. Kromhout, 500 N.E.2d at 793 (where there is substantial identity of circumstance and the "danger of unfairness, confusion or undue expenditure of time in the trial of collateral issues seems small, the admission of such evidence" lies within the judge's discretion) (citation omitted); Kaeo v. Davis, 68 Haw. 447, 719 P.2d 387, 393 (1986) (finding that evidence of prior accidents may be "highly probative" in a negligence action) (citing Simon v. Town of Kennebunkport, 417 A.2d 982, 985 (Me. 1980)); Elsworth v. Beech Aircraft Corp., 37 Cal.3d 540, 208 Cal.Rptr. 874, 691 P.2d 630, 639 (1984) (holding that evidence of prior accidents is admissible to show a defective condition or the cause of an accident, so long as circumstances are similar and not too remote) (citation omitted); Johnson v. State, 636 P.2d 47 (Alaska 1981) (noting that evidence of prior and subsequent accidents under similar conditions is admissible to help prove a defective or dangerous condition, causation or notice); Schaffner v. Chicago and North Western Transp. Co., 161 Ill.App.3d 742, 113 IlI.Dec. 489, 515 N.E.2d 298, 309 (1987) (holding evidence of prior accidents admissible to help prove negligence provided circumstances are similar), aff'd, 129 Ill.2d 1, 133 Ill.Dec. 432, 541 N.E.2d 643 (1989); see also McCormick on Evidence, § 200 at 703-07 (Strong, 5th ed.1995) (stating that evidence of other accidents may be admissible to show the existence of a defect, causation, the risk that defendant's conduct created, and notice of the defect).
In each of these cases the issue was the admissibility of prior accidents. Here, evidence of prior accidents was admitted without objection. We must decide whether defendant should have been permitted to rebut the prior accident evidence by demonstrating that hundreds of thousands of park patrons rode Lightning Falls without sustaining an injury similar to Schaefer's.
Shortly after Wymbs was published, we decided Rogove, where the trial judge permitted defense counsel to comment on plaintiff's expert's testimony that he never received the reports he requested concerning prior accidents at the location where plaintiff was injured. 331 N.J.Super. 212, 751 A.2d 607. In summation, defense counsel argued, based on the expert's testimony, that there was no evidence of prior accidents in the area of plaintiff's accident. In reversing the verdict of no cause for action, we first acknowledged that "[i]t has long been the law in this State that the incidents or absence of other accidents is not admissible in a negligence action to show the dangerousness or the safety of the condition being impugned." Id. at 215, 751 A.2d 607. We recognized that these principles were modified in Wymbs, but pointed out the qualitative difference "between showing a dangerous condition from prior accidents and showing the absence of a dangerous condition from the lack of prior accidents." Id. at 216, 751 A.2d 607. The distinction is quite simply that proving a negative by the lack of accidents is "more complex" than proving the happening of an accident. Ibid. We did not reach the substantive question of the admissibility of the lack of prior accidents, however, because the record in Rogove did not contain evidence that there had been no prior accidents at the location of plaintiff's accident, but only that plaintiff's expert had asked for accident reports spanning a ten-year period but had not received them. *1065 Ibid. We concluded that the "absence of a response to that request did not mean such reports were nonexistent and certainly did not show a lack of accidents over a ten-year period." Ibid.
Although our research has not uncovered a case in New Jersey where evidence of accident free safety history has been permitted to refute evidence of prior accidents, that a positive safety history may be admissible under certain conditions has been recognized in standard treatises. See McCormick On Evidence § 200 at 708 (where a plaintiff has presented evidence of prior accidents to the jury, "it would seem perverse to tell a jury that one or two persons beside the plaintiff tripped on defendant's stairwell while withholding from them the further information that another thousand persons descended the same stairs without incident."); see also 2 Wigmore On Evidence § 444 at 532 (Chadbourn rev.1979) (leaving the decision whether this type of evidence is admissible to the trial judge).
Other jurisdictions permit the introduction of safety history. In Schaffner, the issue was whether a bicycle design was defectively dangerous, causing the front wheel of the bicycle to disengage, tossing the rider onto the pavement. 161 Ill.App.3d 742, 113 Ill.Dec. 489, 515 N.E.2d 298. The plaintiff was permitted to introduce evidence of prior similar incidents. The trial court then permitted evidence that many persons other than the injured party had used the same type of bicycle without incident. The intermediate appellate court of Illinois affirmed, concluding that when other accidents are admissible to demonstrate the existence of a particular defect or condition, "then the absence of accidents during a period of similar exposure and experience, would generally be receivable to show the nonexistence of these facts." Id. at 309 (citation omitted). The court said: "It would have been totally inconsistent to permit plaintiffs to introduce evidence of similar prior accidents, and then prohibit Schwinn from introducing rebuttal evidence of the number of similar bicycles sold and the absence of reported problems with the ... mechanism." Ibid.; see Salvi v. Montgomery Ward & Co., Inc., 140 Ill.App.3d 896, 95 Ill.Dec. 173, 489 N.E.2d 394, 400 (1986) (holding that evidence tending to show the absence of prior accidents may be admissible upon proper foundation) (citations omitted); Jones v. Pak-Mor Mfg. Co., 145 Ariz. 121, 700 P.2d 819, 822, 826-27 (1985) (holding that no rule of evidence mandates rejection of safety history evidence; that a per se rule of inadmissibility is "manifestly incompatible with modern principles of evidence") (citing Simon, 417 A.2d at 985), cert. denied, 474 U.S. 948, 106 S.Ct. 314, 88 L.Ed.2d 295 (1985); Stark v. Allis-Chalmers and Northwest Roads, Inc., 2 Wash.App. 399, 467 P.2d 854 (1970) (allowing evidence that no prior accidents similar to plaintiff's involving any of more than 10,000 tractors had occurred), review denied, 78 Wash.2d 993 (1970). See also Jay M. Zitter, Annotation, Admissibility of Evidence of Absence of Other Accidents or Injuries at Place Where Injury or Damage Occurred, 10 A.L.R. 5th 371 (1993) (listing a compendium of cases addressing the issue). The common thread that runs through all of the cases and treatises is that the party offering proof of no prior accidents must demonstrate a substantial similarity between the circumstances surrounding the accident at issue and the prior safety history evidence.
Applying these principles to the case before us, we find no abuse of discretion by the trial court in permitting the safety history of the Lightning Falls ride for exculpatory purposes. Plaintiffs' witnesses, Musselman and Zierold, each testified about their prior accidents involving *1066 the Lightning Falls ride. This evidence was offered to demonstrate that the Lightning Falls ride was dangerous. Once the jury heard this evidence, the ride's safety history became relevant. The evidence showed that signs are posted to demonstrate how the ride should be used. Unlike in Rogove, the record does contain evidence that no injury similar to Schaefer's occurred since the ride opened in 1989. Approximately 3,000 people ride down the Lightning Falls slides each weekday and 8,000 use the slides on weekends. During a typical year, approximately 200,000 people use the slides. Despite these substantial numbers, park records demonstrate that no injuries similar to Schaefer's have been reported. The safety experience in this case is so extensive as to satisfy the similarity requirement. See McCormick on Evidence, § 200 at 709 ("[w]hen the experience sought to be proved is so extensive as to be sure to include an adequate number of similar situations, the similarity requirement should be considered satisfied."). Here, the similarity of use of the water slide by Schaefer and the slide's use experience since it opened in 1989 has been amply demonstrated.
Our Rules of Evidence do not prohibit other accident, or a lack of other accident, evidence. N.J.R.E. 401 defines relevant evidence as evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." The test of relevancy is "its probative value with respect to the points in issue." Biunno, Current N.J. Rules of Evidence, comment 1 to N.J.R.E. 401 (2001). N.J.R.E. 402 provides that unless otherwise prohibited, "all relevant evidence is admissible." Our Rules of Evidence also give the trial judge broad discretion to exclude otherwise relevant evidence, if "its probative value is substantially outweighed by the risk of (a) undue prejudice, confusion of issues, or misleading the jury or (b) undue delay, waste of time, or needless presentation of cumulative evidence." N.J.R.E. 403. Thus, under an N.J.R.E. 403 analysis, where the admission of evidence of the lack of prior accidents becomes an issue, whether to admit the contested evidence requires the trial judge to balance the probative value of the proffered evidence against its potential prejudice. This is an exercise that trial judges perform every day in other contexts. The evidence rules give the trial judge discretion to examine the similarity of the circumstances between the accident at issue and the conditions which existed over the period of time within which no accidents occurred, as well as the reliability of defendant's history of a lack of prior accidents. The trial judge may also exercise his or her discretion to exclude evidence of safety history when circumstances so warrant under N.J.R.E. 403, or provide the jury with an appropriate limiting instruction when indicated.
Here, the trial judge allowed the evidence of no prior accidents in response to plaintiffs' witnesses' testimony seeking to prove a dangerous condition through evidence of prior accidents; the judge did not abuse his discretion. See Benevenga v. Digregorio, 325 N.J.Super. 27, 32, 737 A.2d 696 (App.Div.1999) ("Traditional rules of appellate review require substantial deference to a trial court's evidentiary rulings.") (citation omitted), certif. denied, 163 N.J. 79, 747 A.2d 287 (2000).

IV
We find no merit to plaintiffs' contention that the verdict was against the weight of the evidence. We start with the proposition that neither the trial court, nor this court, may substitute its judgment for that of the jury simply because we may have reached another conclusion. Borngesser *1067 v. Jersey Shore Med. Ctr., 340 N.J.Super. 369, 377, 774 A.2d 615 (App. Div.2001); Dombroski v. City of Atlantic City, 308 N.J.Super. 459, 467, 706 A.2d 242 (App.Div.1998) (citing Dolson v. Anastasia, 55 N.J. 2, 6, 258 A.2d 706 (1969)). The question is whether there was sufficient credible evidence that "reasonable minds might accept [ ] it as adequate to support" the jury's conclusion that defendant was not negligent. Dolson, 55 N.J. at 6, 258 A.2d 706.
Hunsucker, defendant's engineering liability expert, Minninger, the Park's director of operations, and Walters, the Park's maintenance foreman, all essentially testified that after the initial start-up procedure, it was not possible for Lightning Falls to operate when the water level in the splash pool was not full and the water was not flowing over the back of the steps into the Lazy River. The videotape corroborated their testimony. There was evidence that more than 6,000 gallons of water per minute flow down the water slides and has nowhere to go but over the back of the steps. Despite plaintiffs' witnesses' testimony to the contrary, defendants' witnesses presented sufficient evidence for the jury to conclude that it was impossible for the water level in the splash pool to drop eighteen to twenty-four inches below the mouth of the chutes and not flow over the back of the steps. Water was flowing down the slide when Schaefer rode down the chute and entered the splash pool. The jury had sufficient evidence before it to find that the ride could not operate in the manner suggested by plaintiffs if the water level in the splash pool was below the bottom of the chute. We find no basis to disturb the jury verdict.
Affirmed.
WECKER, J.A.D., concurring.
I concur in the result, and agree that consistent with Wymbs v. Tp. of Wayne, 163 N.J. 523, 750 A.2d 751 (2000), and the rationale set forth in McCormick on Evidence, § 200 (5th ed.1999), the admissibility of evidence of prior accidents requires case by case analysis and falls within the discretion of the trial judge based upon N.J.R.E. 401 and 403. I write separately out of concern lest our decision in this case be read too broadly.
Evidence of prior accidents can be admitted, as Justice Coleman explained in Wymbs, for various purposes, conditioned upon the proper foundation. In Wymbs, a Tort Claims Act "dangerous condition" case governed by N.J.S.A. 59:4-2, the Court ruled that the plaintiffs' proffered evidence of prior accidents on a sharp curve in a roadway was properly limited to the element of notice and disallowed as substantive proof of a dangerous condition. 163 N.J. at 537, 750 A.2d 751. Such prior accident evidence proffered by a plaintiff does not, however, necessarily open the door to defense evidence of an absence of prior accidents. That question depends upon the purpose for which the prior accident evidence is allowed, as well as the similarity of conditions. For example, if a jury is permitted to consider prior incidents as evidence of a design defect in a products liability case, then statistical evidence demonstrating the number of users or frequency of use by comparison with a small number of accidents may properly be admitted for the jury's consideration. Cf. Ryan v. KDI Sylvan Pools, Inc., 121 N.J. 276, 289-90, 579 A.2d 1241 (1990) (defense expert's testimony regarding incidence of spinal cord injuries involving diving boards that conformed to industry standards was relevant to risk-utility analysis, and its exclusion was reversible error.) In Ryan, the plaintiff had not offered any evidence of prior accidents.
On the other hand, where evidence of prior accidents is admitted for a limited *1068 purpose, such as notice of a dangerous condition, it would generally be improper to allow evidence of a lack of accidents. Similarly, where evidence of similar prior accidents is offered to counter a defense of impossibility, as appears to have been the purpose of plaintiff's prior accident evidence in this case, evidence of an absence of other accidents likely would not bear sufficient relevance to justify its potential prejudice.
My colleagues find that plaintiff's proffered evidence of two prior incidents opened the door to defendant's evidence of a lack of similar accidents or incidents. The record in this case does not show that the jury was instructed to limit its use of the testimony of witnesses Musselman and Zierold. The essence of the testimony of each was that on a separate, prior occasion, that witness also experienced a drop coming off the slide and noticed that the water level in the splash pool was significantly lower than the end of the slide chute. Had the jury been instructed as to the limited use of those witnesses' testimonythat is, that it was available only to refute defendant's expert's testimony that it would have been impossible for the slide to operate if the water level in the splash pool had been as low as plaintiff allegedI would find defendant's evidence of non-accidents to have been inadmissible. But plaintiff did not limit her proffer, defendant neither objected to the evidence nor sought a limiting instruction, and the judge had no obligation to limit the use of that testimony. Thus I cannot say that allowing defendant's evidence of the slide's prior safety record as substantive evidence on plaintiff's claim was an abuse of the discretion normally accorded a trial judge's evidentiary ruling. E.g., Green v. N.J. Mfrs. Ins., 160 N.J. 480, 492, 734 A.2d 1147 (1999).
There was ample evidence offered by both parties respecting the operation of the water slide and the likelihood that plaintiff was injured in the manner she claimed, as a result of a reduced water level in the pool. Defendant offered unobjectionable evidence of its inspection routine and its employees' conduct on the day of the accident. Moreover, plaintiff offered no evidence that the lowered water level she experienced had been present long enough or frequently enough for defendant, in the exercise of due care, to have discovered it. The jury was free to accept or reject any of the evidence, and under all the circumstances, I cannot conclude that the admission of defendant's non-accident history significantly prejudiced plaintiff's case. I therefore concur.
NOTES
[1] All references to Schaefer shall be to Maureen Schaefer.