**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1731-18T3

DIANE CARRION and
JOHN CARRION,

      Plaintiffs-Appellants,

v.

MOUNTAIN CREEK
RESORT, INC.,

      Defendant-Respondent.

_____

Argued January 22, 2020 – Decided September 10, 2020

Before Judges Accurso, Gilson, and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Docket No. L-0315-14.

John J. Scura, III, argued the cause for appellants (Scura, Wigfield, Heyer, Stevens & Cammarota, LLP, attorneys; John J. Scura, III, of counsel and on the briefs; Guillermo J. Gonzalez, on the briefs).

Samuel J. McNulty argued the cause for respondent (Hueston McNulty, PC, attorneys; Samuel J. McNulty and John Francis Gaffney, on the brief).

PER CURIAM

Plaintiff Diane Carrion and her husband John, who sued per quod, appeal from the denial of their new trial motion following a no-cause verdict after a fourteen-day jury trial. Finding no error, we affirm.

Plaintiff was severely injured in a ski accident at defendant Mountain Creek Resort, Inc. in February 2013. Plaintiff, then fifty-five, a self-described expert skier, had been skiing since she was seven- or eight-years-old. Although she had learned to ski at Mountain Creek and had skied there for years, she had never skied the resort's Pipe Line trail, an "expert only," double black diamond trail, the resort's steepest and most difficult.

On the day of her accident, the Pipe Line trail was deemed by ski patrollers too icy to open early in the morning. The parties disputed when ski patrol opened it. Defendant claimed it opened Pipe Line at 11:00 a.m. Plaintiff claimed it didn't open until after 1:00 p.m., and that she and her friend were the first skiers down. Plaintiff admitted seeing the sign at the top of the trail, which read: "<u>CAUTION</u> EXTREME EXPERT TERRAIN ONLY!!! IF YOU ARE NOT AN EXPERT SKIER/RIDER DO NOT ATTEMPT THIS TRAIL SERIOUS INJURY MAY OCCUR… WE ARE NOT KIDDING!"

A-1731-18T3

The Pipe Line trail started out relatively flat for a short distance and then dropped off very steeply from a breakover or headwall. Besides being steep, the trail was relatively narrow. Off-trail to the skier's right were rocks, while off-trail to the left were trees, light poles and snow-making equipment, including water and air pipes, hydrants and several poles or mounting pipes for snow-making guns. Bamboo markers topped with orange disks, called lollipops, marked the left edge of the trail for at least some of its length.

Plaintiff testified she was still on the flat section of the trail, about ten feet from the drop off when she tried to stop, but could not because the surface was like a sheet of ice. She went down on her right side, in what she described as a defensive maneuver, while trying to unsuccessfully dig her skis in to catch an edge. Plaintiff's companion testified she was five to six feet behind plaintiff, pausing to scope out the trail, when plaintiff "took right off" skiing over the headwall without stopping. According to a report prepared by the ski patrol shortly after the accident, plaintiff slid from right below the headwall in the middle of the trail diagonally to her left, leaving the trail and continuing for twenty-five feet, and then slid another 120 feet downhill, striking a four-and-a-half-inch diameter mounting pipe for a snowmaking gun, located ten feet off the trail and 350 feet from the top.

3

The mounting pipe was damaged the month before plaintiff's accident when a winch cable attached to a trail grooming machine hit it, causing it to lean over. While defendant removed the snowmaking gun from the damaged mounting pipe, and secured it nearby, it did not remove the damaged pipe. Defendant's risk manager testified the pipe could not be removed during the winter because defendant could not get the necessary machinery to do the job on the steep, snow-covered slope. Defendant claimed it didn't want to cut it down for fear the pipe could become a hazard as the level of snow decreased later in the season. The resort was also interested in preserving the hole for the mounting pipe, so it could replace the pipe and restore the gun to the same position for next ski season.

Plaintiff's theory was that defendant violated the New Jersey Ski Statute, N.J.S.A. 5:13-1 to -11, requiring ski resort operators, "to the extent practicable," to "[r]emove as soon as practicable obvious, man-made hazards." N.J.S.A. 5:13-3(a)(3). She claimed defendant should have either removed the pipe or reinstalled the "Gilman padding" on the brackets provided on the mounting pipe, and that either would have prevented her injuries. Plaintiff claimed the damaged pipe was no longer "snow-making equipment" but instead was a rusty, bent pipe with mangled bracketing abandoned on the trail

and not visible to her at the icy headwall. Plaintiff also contended defendant was negligent in opening the Pipe Line trail, which she contended was too icy to ski safely.

Defendant maintained that the damaged mounting pipe was both ten feet off the trail and clearly visible to skiers from above, making it not a "hazard" under the ski statute. The resort claimed that Gilman padding was primarily a warning device to make an obstacle visible to skiers, as it offered protection to skiers in only low-speed impacts as might occur on beginner slopes. Defendant claimed it did not use Gilman padding on Pipe Line, a fact vigorously disputed by plaintiff. The resort claimed its ski patrol skied the Pipe Line trail both before deciding it was too icy to open when the resort opened for the day, and later before deciding the sun had warmed the slope to soften the surface enough for expert skiers to traverse. Defendant argued the accident resulted from plaintiff skiing a slope beyond her abilities, and, based on the testimony of its biomechanical expert, that Gilman padding would have made no difference in her injuries given her twenty-two miles per hour speed at impact in an uncontrolled fall.

After hearing the testimony of eleven fact witnesses and eleven experts, the jury unanimously voted that plaintiff had not proved that defendant had

violated the Ski Statute. Plaintiff filed a timely motion for new trial on three grounds, the same issues she raises on appeal: 1) that she was entitled to a spoliation charge based on defendant's disposal of the mounting pipe and bracketing; 2) that the court erred in permitting defendant to argue that the damaged mounting pipe was an "obstacle" instead of a "hazard" as defined in the Ski Statute; and 3) erred in allowing defendant to present testimony that the condition of the surface of the Pipe Line trail after its delayed opening did not prevent other skiers from successfully skiing the slope.

The facts on the spoliation issue are not disputed. Very shortly after the accident, plaintiff's counsel sent a letter to Mountain Creek to preserve evidence and make the Pipe Line trail available for inspection. Suit was filed in January 2014, eleven months after the accident. Plaintiff's ski area operations and risk management expert inspected the damaged pipe and bracketing in place in September 2014. They were joined by a professional photographer, who took pictures and a video. Defendant's maintenance staff thereafter removed the damaged pipe and disposed of it in anticipation of the 2014-2015 ski season.

Six months later, plaintiff filed a motion to extend discovery. In a certification in support of the motion, plaintiff's counsel stated he might need a

second site inspection of the area where plaintiff was injured. Thereafter, defendant revealed it had cut down the pipe after the site inspection and scrapped it, the maintenance staff not having been instructed it needed to be retained.

Plaintiff's biomechanical expert, who conceded he would not have been able to do any testing of the pipe on the slope due to its steepness, conducted exemplar testing demonstrating that had Gilman padding been in place on the brackets attached to the damaged pipe, that plaintiff would have suffered only minor injuries. Defendant's motion to block the expert's third report detailing that testing and any trial testimony about it was denied. Plaintiff's cross-motion for a spoliation charge was denied without prejudice, with the motion judge specifically providing it could be renewed before the trial judge on an in limine motion.

Plaintiff renewed her motion for a spoliation charge in limine, which the trial judge denied. The judge applied the four-factor test for determining the existence of a duty to preserve evidence independent of a court order we endorsed in Aetna Life & Casualty Co. v. Imet Mason Contractors, that is: "(1) pending or probable litigation involving the defendants; (2) knowledge by the plaintiff of the existence or likelihood of litigation; (3) foreseeability of harm

7                                                              A-1731-18T3

to the defendants, or in other words, discarding the evidence would be prejudicial to defendants; and (4) evidence relevant to the litigation." 309 N.J. Super. 358, 366 (App. Div. 1998) (quoting Hirsch v. Gen. Motors Corp., 266 N.J. Super. 222, 250 (Law Div. 1993)). The judge had no hesitation finding factors one, two, and four. He could not, however, find any prejudice to plaintiff flowing from defendant's destruction of the pipe after plaintiff's site inspection under factor three.

Specifically, the judge found plaintiff had conducted a full site inspection with an expert in September 2014, examining the damaged pipe and bracketing in place, including photographs and a video taken by a professional photographer. Plaintiff's counsel did not follow-up that inspection with any further request that the pipe be preserved, and had not presented any evidence to the court that its destruction was anything other than inadvertent. The judge concluded that this was

> not the type of case where the evidence is destroyed, never photographed, never obtained and [the plaintiff] can't rebut in any fashion or can't address that issue.
>
> So, they had photographs of it, they could have asked for . . . similar ones that are on there on the hill with the bracketing and they didn't do that and they did conduct their own tests, which I've allowed in. . . .
>
> . . . .

> And, quite frankly, the Court finds it . . . does not impair the plaintiff's ability to make her case.
>
> So, in view of that I don't think even if there was deemed spoliation, I don't think there's any prejudice or that – I don't think the request[ed] relief for and adverse interference is [an] appropriate remedy and I don't think really, quite frankly, there needs to be any type of sanction.

On the motion for new trial, plaintiff argued the mounting pipe and Gilman bracketing was the most critical evidence in the action and its destruction before her biomechanical expert could inspect it and her inability to display it to the jury severely prejudiced her case. She claimed her expert's inability to test, measure and analyze the actual configuration of the pipe left him vulnerable to attack on cross-examination on the configuration he adopted in his exemplar testing. She argued that had her expert been able to examine, measure and analyze the pipe and bracketing, he could have conducted more exact exemplar testing and been less subject to attack. She also argued her inability to show the "rusty pipe" to the jury prevented her from effectively countering defendant's arguments that the damaged pipe and bracketing were necessary equipment for the ski area.

The trial judge rejected those arguments. After having heard all of the evidence presented at trial, the judge came to the same conclusion he had on

the in limine motion, that defendant's destruction of the pipe after plaintiff's ski operations expert had examined and photographed it in place had not hampered plaintiff's ability to prosecute her case. The judge noted that plaintiff's biomechanical expert conducted his own site inspection in June 2015, locating the pipe that plaintiff hit, which by then had been cut off almost flush with the ground. He also discovered several other pipes on the slope that had protective padding and the Gilman metal offset supports. Plaintiff 's ski operations and biomechanics experts testified at trial that the pipe directly above the one plaintiff hit had Gilman brackets and discarded padding nearby and the one below it had brackets and padding.

The judge concluded

> that the loss of that damaged . . . mounting pipe was not prejudicial in any fashion. And if they needed it they had ample opportunity to request identical pipes to conduct any experiments. That was never requested.
>
> Now the plaintiffs cannot really offer any evidence as to their ability to prove their case was interfered with or that they suffered any harm resulting from the pipe being cut down as I've indicated.
>
> And when you look at this in my judgment the plaintiffs had the ability to prove their case with the facts and evidence as they existed. They already had the actual pipe, the Gilman bracket, inspected, photographed and documented is my recollection.

A-1731-18T3

They took numerous photographs, including photographs with the attorney involved and the expert involved with the brackets and the pipe. And it was documented and inspected and photographed by their liability expert.

[Plaintiffs] could have . . . inspected an exact similar pipe with padding and brackets on the pipeline trail but chose not to do so. And as I said I noted the pipe in question did not have that padding. They could have requested an identical mounting pipe to be produced and they chose not to do so. So in my judgment there was no prejudice [and] the motion in limine for an adverse inference jury charge was properly denied.

The court also rejected plaintiff's argument that she was entitled to a new trial because the trial court permitted defense counsel to argue that the damaged mounting pipe was an "obstacle" not a "hazard" under the Ski Statute because it was visible to the skier from above. Plaintiff argued that defense counsel's questioning of witnesses using this "irrelevant and confusing term" and defendant's pursuit of this "non-existent obstacle defense" confused the jury, resulting in a verdict that was against the weight of the evidence.

The court noted that during depositions and at trial, both sides' liability experts referred to "obstacles," not in reference to the Ski Statute, "but rather within the context of the sport of downhill skiing [to] describe certain objects." The court found the jury was presented with evidence by both sides as to

11

whether the damaged mounting pipe was a hazard as defined in the Ski Statute, and if it was a hazard, had defendant "removed it" by adequately warning skiers of its presence. See Brett v. Great Am. Rec., 144 N.J. 479, 507 (1996) (acknowledging that warnings "might have reduced [a] hazard and thus 'removed' it for the purposes of the Ski Statute"). Satisfied that the jury was correctly instructed as to the meaning of "hazard" under the Ski Statute, the court found no basis "to substitute its judgment" for that of the jury on whether defendant had violated the statute.

Finally, the judge found no error and no prejudice to plaintiff from its in limine ruling permitting defendant to present testimony about the condition of the Pipe Line trail on the day of plaintiff's injury. Relying on our decision in Schaefer v. Cedar Fair, 348 N.J. Super. 223, 239 (App. Div. 2002), leaving to the trial judge the discretion to admit "lack of other accident" evidence to refute evidence of prior accidents, the court ruled in limine that defendant could present testimony that ski patrollers and other skiers had successfully skied the Pipe Line trail shortly before plaintiff's fall to refute her testimony that defendant was negligent in opening the trail because the slope was too icy to ski.

Reviewing the testimony on the post-trial motion, the court noted the parties disputed whether Pipe Line was opened by the ski patrol at 11:00 a.m., as the ski patrollers testified or closer to 1:30 p.m. as plaintiff testified, and whether she and her companion were the first skiers permitted down Pipe Line that day. The court found the issue for the jury was whether the trail was in a dangerous condition when plaintiff started down, with plaintiff claiming it was a sheet of ice and defendant contending conditions were consistent with an extreme expert level trail. The court rejected plaintiff's argument that it had allowed defendant to argue the lack of prior accidents to show the absence of a dangerous condition as opposed to simply "allow[ing] testimony as to what occurred on the mountain that day in regard to the Pipe Line trail."

Reviewing these same arguments on plaintiff's appeal, we start where the trial judge started, namely that the jury's "verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'" Hayes v. Delamotte, 231 N.J. 373, 385-86 (2018) (quoting Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011)). We review a decision on a motion

for a new trial using the same standard that governs the trial court, that is "whether there was a miscarriage of justice under the law," giving "due deference" to the trial court's "feel of the case." Risko, 206 N.J. at 522.

Applying those standards here, plaintiff has given us no reason to overturn the careful and comprehensive consideration of the motion by Judge Weaver. We are satisfied the judge conscientiously undertook the task assigned in Dolson v. Anastasia to "canvass the record, not to balance the persuasiveness of the evidence on one side as against the other, but to determine whether reasonable minds might accept the evidence as adequate to support the jury verdict." 55 N.J. 2, 6 (1969) (quoting Kulbacki v. Sobchinsky, 38 N.J. 435, 445 (1962)).

We find no error in the judge's determination that a spoliation charge was unwarranted. Having reviewed the record ourselves, the judge's conclusion that plaintiff was not prejudiced by defendant's disposal of the damaged pipe after the inspection of her ski operations expert appears eminently sound. Plaintiff's biomechanical expert conceded he could not conduct any testing on the mountain, and plaintiff chose not to demand production of one of the other mounting pipes with offset bracketing her biomechanical expert found during his site inspection, either for testing or for

display to the jury. Because plaintiff was not prejudiced by destruction of the pipe under the circumstances, a spoliation instruction was not necessary to "even[] the playing field." Rosenblit v. Zimmerman, 166 N.J. 391, 401 (2001). We see no purpose for an N.J.R.E. 104 hearing as plaintiff had deposed the individual responsible for destruction of the pipe and had not presented the court with evidence that it was done other than inadvertently.

We also find no error in the judge denying the motion for new trial based on defendant's contention that the damaged pipe was an "obstacle" not a "hazard" under the Ski Statute. There is no question but that ski operators can "remove" hazards by warning skiers of their presence. See Brett, 144 N.J. at 507; Brough v. Hidden Valley, Inc., 312 N.J. Super. 139, 148 (App. Div. 1998). Warning of the presence of such man-made objects, although "removing" them as hazards for purposes of the Ski Statute, does not make them disappear. The judge found both sides' ski operations experts referred to such objects as "obstacles" apparently to distinguish them from "hazards." Other ski experts have described such objects similarly. Brough, 312 N.J. Super. at 145 (noting plaintiff's expert testified that "there is a custom and practice that would say that any obstacle of this kind [a concrete box used to connect drainage culverts] on or near a trail should be padded, fenced or

otherwise eliminated").  Given no dispute that the jury was properly instructed as to the meaning of "hazard" under the Ski Statute, we find no error.

Plaintiff's remaining argument, that the judge erred in allowing defendant to present testimony that others had successfully skied Pipe Line shortly before she did in order to counter her argument that the slope was in a dangerous condition, requires only brief comment.  As we noted in Schaefer, "[o]ur Rules of Evidence do not prohibit other accident, or a lack of other accident, evidence."  Schaefer, 348 N.J. Super. at 239.  Balancing the probative value of such evidence against its potential prejudice "is an exercise that trial judges perform every day."  Ibid.  Judge Weaver's decision to permit the testimony of others' experience of the conditions of the trail shortly before plaintiff found it "like glass," was well within his considerable discretion.  See Benevenga v. Digregorio, 325 N.J. Super. 27, 32 (App. Div. 1999).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1731-18T3